## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PEGGY A. OWEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )      Case No.  CIV-12-297-F |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Peggy Owen ("Plaintiff") has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's applications for disability insurance benefits and supplemental security income payments under the Social Security Act.  This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3).  Upon review of the pleadings, the administrative record ("AR") and the parties' briefs, the undersigned recommends the Commissioner's decision be affirmed.

## Administrative Proceedings

In support of her applications seeking disability insurance benefits and supplemental security income payments, Plaintiff alleged that she suffered from severe depression and suicidal thoughts that became disabling as of September

2006.  AR 133 - 140, 160.  Plaintiff's claims were denied and, at her request, an Administrative Law Judge ("ALJ") conducted an August 2010 hearing where Plaintiff, who was represented by counsel, and a vocational expert testified.  *Id.* at 27 - 55, 81 - 82.  In his September 2010 hearing decision, the ALJ – upon application of the Medical-Vocational Guidelines or "grids" – found Plaintiff retained the capacity to perform work which was available in the national economy and, accordingly, was not disabled within the meaning of the Social Security Act.  *Id.* at 11 - 19.  The Appeals Council of the Social Security Administration declined Plaintiff's request for review, *id.* at 1 - 6, and Plaintiff subsequently sought review of the Commissioner's final decision in this court.

## The ALJ's Findings

The ALJ found Plaintiff to be severely impaired by major depressive disorder, polysubstance abuse, cocaine dependence, borderline personality disorder, and a history of asthma.  *Id.* at 13.  Following his review of the medical evidence, the ALJ determined these impairments did not meet or equal any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.* at 14 - 15. In reaching this conclusion, the ALJ found, in part, that Plaintiff had a mild restriction in her activities of daily living; moderate difficulties in social functioning and in concentration, persistence, or pace; and, had experienced one to two episodes of decompensation for extended durations.  *Id.* at 15.  After his

2

review of the entire record, including the objective medical and opinion evidence, and after fully considering Plaintiff's subjective complaints, the ALJ concluded that despite her impairments, Plaintiff had the residual functional capacity ("RFC")[1] to perform light[2] work[3] with certain non-exertional limitations.  *Id.* at 16.  Specifically, she was restricted to work where she would be required to understand, remember, and carry out only simple instructions with routine supervision and where she would have only superficial contact with co-workers and no contact with the general public.  *Id.*  She could adapt to changes in the routine work setting.  *Id.*  Finally, she would need to avoid exposure to work

---

[1]      Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[2]      Social Security regulations provide that

> [l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

[3]      The ALJ limited Plaintiff to light work because of her history of asthma.  AR 16 and 17.

hazards.  *Id.*

The ALJ noted the RFC findings were made, in part,  upon consideration of opinion evidence,  *id.,*  specifically the opinions of the State agency psychologists who had evaluated Plaintiff's mental functional capacity.  *Id.* at 17. He concluded, "[i]n sum, the above residual functional capacity is supported by the claimant's activities of daily living and the medical evidence of record."  *Id,*

Then, after finding Plaintiff could not return to her past work as a dental assistant because her RFC precluded the performance of skilled work, *id.* at 17-18, the ALJ found she could perform other work which was available in the national economy:

> In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2.  If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not-disabled" depending upon the claimant's specific vocational profile (SSR 83-11).  When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14).  If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

> If the claimant had the residual functional capacity to perform the full range of light work, considering the claimant's age, education,

and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.2l. However, the additional limitations have little or no effect on the occupational base of unskilled light work. Restrictions against unprotected moving machinery and unprotected heights do not significantly erode the occupational base at any exertional level. SSR 85-15. Light unskilled work generally requires work with things rather than with people, as noted in the notes following the Medical-Vocational Rule 202.00. The claimant retains the mental skills for unskilled work. SSR 85-15. As noted, the claimant retains the capacity for work with routine supervision and work-related contact. The non-exertional limitations had little or no effect on the occupational base of unskilled light work.

*Id.* at 18. Thus, the ALJ concluded Plaintiff was not disabled within the meaning of the Social Security Act. *Id.*

## Standard of Review

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's "factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue,* 602 F.3d 1136, 1140 (10th Cir. 2010). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988). "A decision is not based on substantial evidence if it

is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.*

## Determination of Disability

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving she has one or more severe impairments. 20 C.F.R. §§ 404.1512, 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff makes a prima facie showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

**Plaintiff's Claims of Error**

Plaintiff has framed two challenges to the ALJ's decision.  First, she maintains "[t]he ALJ erred by conclusively relying on the grids to deny benefits despite the presence of severe and significant nonexertional impairments," Doc. 18, at 10 (Plaintiff's Opening Brief),  and, second, claims  "[t]he ALJ's finding that the nonexertional limitations in the RFC do not significantly impact the occupational base for light work is not supported by substantial evidence." *Id.* at 19.  These two issues are linked and are addressed together.

**Analysis**

The Commissioner promulgated the Medical-Vocational Guidelines – the so-called "grids" – to assist with the burden at step five of the sequential process. *See* 20 C.F.R. pt. 404, subpt. P, App. 2.  "The grids are matrices of the 'four factors identified by Congress  – physical ability, age, education, and work experience – and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy.'" *Daniels v. Apfel,* 154 F.3d 1129, 1132 (10th Cir. 1998) (quoting *Heckler v. Campbell,* 461 U.S. 458, 461-62 (1983)).  "The grids should not be applied conclusively in a particular case unless the claimant [can] perform the full range of work required of that RFC category on a daily basis and unless the claimant possesses the physical capacities to perform most of the jobs in that

range." *Thompson v. Sullivan,* 987 F.2d 1482, 1488 (10th Cir. 1993) (quotation and alteration omitted).

In its recent decision in *Mitchell v. Astrue,* No. 12-6012, 2012 WL 4478369 (10th Cir. Oct. 1, 2012) (unpublished op.),[4] the Tenth Circuit addressed many of the contentions and legal authorities presented by Plaintiff in this appeal.[5]  In affirming the district court's judgment in favor of the Commissioner, the court first reiterated that circuit precedent generally precludes conclusive reliance on the grids if a claimant's non-exertional impairments limit a claimant's ability to perform a full range of work at a particular exertional level.  *Id.* at *1. Moreover, such conclusive reliance is particularly questionable in evaluating non-exertional pain and mental limitations.  *Id.*  Nonetheless, the court observed

> it is equally clear in our circuit that "[t]he mere presence of a nonexertional impairment does not preclude reliance on the grids." *Thompson*, 987 F.2d at 1488. The nonexertional impairment "must interfere with the ability to work." *Id.* Use of the grids is foreclosed only where the "nonexertional impairments are significant enough to limit [the claimant's] ability to perform the full range of jobs" available.  *Channel* [v.], 747 F.2d [at] 583 [ ].  In fact, the grids may be used for claimants with nonexertional impairments "whenever the claimant can perform a substantial majority of the work in the designated [residual functional capacity] category."  *Evans v.*

---

[4]    The appeal in *Mitchell* was taken from a judgment entered against her in the Western District of Oklahoma by the Honorable Lee R. West in Case No. CIV-11-139-W.

[5]    The Tenth Circuit decided in the interim between the filing of Plaintiff's opening and reply briefs.

> *Chater*, 55 F.3d 530, 532 (10th Cir.1995). While an ALJ may
> determine that a nonexertional impairment has only a negligible
> effect on the range of jobs available, he "must back such a finding of
> negligible effect with the evidence to substantiate it." *Talbot v.*
> *Heckler*, 814 F.2d 1456, 1465 (10th Cir.1987). And "once a mental
> impairment is considered to be severe, it must be included in the
> residual functional capacity assessment, the fifth step in the
> sequential evaluation process." *Hargis [v. Sullivan]*, 945 F.2d,
> [1482,] 1488 [10th Cir. 1991].

*Id.*

The court went on to note the ALJ – as did the ALJ here, *supra* pp. 2 - 5 – found severe mental impairments that did not meet or equal a listed impairment; noted moderate difficulties in social functioning and in concentration, persistence, or pace; and, formulated an RFC for light work in which claimant, who could adapt to a work situation, could perform simple tasks with routine supervision, never being required to relate to the general public and only being required to relate to peers on a superficial work basis. *Id.* at *2.[6] Likewise, the court observed the ALJ – as did the ALJ here – specifically referenced the claimant's mental impairment in the RFC and noted the RFC's support both by the medical evidence and by the opinions of the State agency psychologists. *Id.*

---

[6]     Plaintiff in the present case is mistaken in arguing that the claimant in *Mitchell* was not restricted to superficial contact with coworkers, that is, her work peers. Doc. 20, at 3 (Plaintiff's Reply Brief).

The same parallels hold true through the next part of the court's analysis. Both ALJs considered their respective claimant's age, education, work experience, and RFC, and found there were jobs existing in significant numbers in the national economy that the claimant's could perform." *Mitchell*, 2012 WL 4478369, at *2; AR 18.  Both ALJs relied on Social Security Ruling 85–15 in finding the claimants retained the mental skills required for unskilled work[7] and both concluded the respective claimants "retain[ed] the capacity for work with routine supervision and work-related contact." *Mitchell*, 2012 WL 4478369, at *2; AR 18.

With regard to the ALJ's support for his conclusion that Plaintiff in this case could perform substantially all unskilled light work jobs, Plaintiff is correct in arguing that *Mitchell* is distinguishable because the claimant in that case did not share Plaintiff's restriction from work hazards. Doc. 20, at 3.  Nonetheless, consistent with the findings in *Mitchell,* the ALJ properly supported his determination that Plaintiff could still perform a substantial majority of unskilled light work despite a work hazard restriction by concluding – in reliance on SSR 85-15 – that "[r]estrictions against unprotected moving

---

[7]     "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."  SSR 85-15, 1985 WL 56857, at *4.

machinery and unprotected heights do not significantly erode the occupational base at any level."[8]  AR 18.

Finally, the court in *Mitchell* distinguished the same legal authority submitted by Plaintiff here:

> The authority Ms. Mitchell cites to support her position that an ALJ's use of the grids is inappropriate where the claimant has severe mental impairments is misplaced.  In the cases Ms. Mitchell cites, many of which are unpublished, the ALJ either failed to adequately consider the claimant's nonexertional limitations, or failed to support a grid-based decision in the record.  *See, e.g.,* *Thompson*, 987 F.2d at 1491 ("The ALJ . . . ignored completely [claimant's] pain throughout the rest of his analysis."); *Allen v. Barnhart*, 357 F.3d 1140, 1143 (10th Cir. 2004) ("[T]he ALJ ignored the many additional physical and mental restrictions that he found qualified [claimant's] RFC and simply applied the grids. . . ."); *Lopez v. Barnhart*, 78 [Fed. Appx.] 675, 679 (10th Cir. 2003) (unpublished opinion) ("The ALJ's conclusion that claimant could perform most light work jobs was not supported by the [vocational expert's] testimony or any other source." (emphasis added)); *Wadford v. Chater*, No. 95-7147, 1996 WL 421988, at *1 (10th Cir. July 26, 1996) (unpublished opinion) ("Because there is nothing in the record to satisfy the Secretary's burden . . . , we cannot say the ALJ's grid-based decision is supported by the requisite substantial evidence.").

> In this case, though, the ALJ supported his use of the grids with a discussion of Ms. Mitchell's mental impairment, its effect on job performance under SSR 85-15, and Ms. Mitchell's continuing ability to perform a substantial majority of light unskilled work.

*Mitchell,* 2012 WL 4478369, at *2-3.

---

[8]     *See* SSR 85-15, 1985 WL 56857, at *8 (explaining work hazards and their effect on work at all exertional levels).

The same is true under the facts of this case. The ALJ supported his conclusive reliance on the grids by discussing Plaintiff's non-exertional impairments and how those impairments would impact job performance under SSR 85-15, concluding that the non-exertional impairments did not limit her ability to perform substantially all unskilled light work. The ALJ did not err in applying the grids to determine that Plaintiff was not disabled.

## RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the foregoing reasons, the undersigned recommends the Commissioner's decision be affirmed. The parties are advised of their right to object to this Report and Recommendation by March 6, 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 13th day of February, 2013.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE